**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ANN GARRISON; PAMELA
BIELSKI; VICKY DUNBAR;
TERESITA WELLS; CONNIE
BRADY; SHERRY CONWAY;
PATRICIA ERICKSON,

        Plaintiffs-Appellants,

        v.

GAMBRO, INC.,

        Defendant-Appellee.

No. 04-1409

Before **HENRY, ANDERSON**, and **TYMKOVICH**, Circuit Judges.

Appellee's motion to publish the order and judgment of October 6, 2005, is

granted. A copy of the published opinion is attached.

Entered for the Court
Clerk of Court

By:
        Deputy Clerk

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

ANN GARRISON; PAMELA
BIELSKI; VICKY DUNBAR;
TERESITA WELLS; CONNIE
BRADY; SHERRY CONWAY;
PATRICIA ERICKSON,

No. 04-1409

Plaintiffs-Appellants,

v.

GAMBRO, INC.,

Defendant-Appellee.

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## (D.C. No. 02-WM-2239 (MJW))

Submitted on the briefs:[*]

John R. Olsen of Olsen & Brown, LLC, Niwot, Colorado, for Appellants.

Kathleen E. Craigmile of Bennington, Johnson, Biermann & Craigmile, LLC,
Denver, Colorado for Appellees.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.

Before **HENRY, ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Plaintiffs/appellants Ann Garrison, Pamela Bielski, Vicky Dunbar, Teresita Wells, Connie Brady, Sherry Conway, and Patricia Erickson appeal from summary judgment granted in favor of defendant/appellee Gambro, Inc., on their claims for employment discrimination filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-e17; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634; and the Colorado Anti-Discrimination Act, Colo. Rev. Stat. §§ 24-34-401 to -406. Our jurisdiction arises under 28 U.S.C. § 1291. Because we conclude that plaintiffs failed to establish a prima facie case of discrimination or retaliation, we affirm the grant of summary judgment.

## I. Standard of Review

Our standard of review is well established.

> We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.

Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim. Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof. The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant.

*Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1326 (10th Cir. 1999) (quotation marks, citations, and brackets omitted).

## II. Undisputed Facts

The plaintiffs all are women over forty years old who work for Gambro as assemblers of disposable medical products. Prior to November 2001, they worked as assemblers in a medical equipment-manufacturing area with six men and two other women, most of whom were also over forty years old. After the company experienced significant quality-related problems in equipment assembly, Gambro decided to reorganize that area, to make several changes in the manufacturing process (including adding self-inspection duties and intensive formal training by the company's engineers), and to divide the equipment-assembly work into two categories called EQ-1 (with only six positions) and EQ-2. Both new positions had an elevated pay band.

As part of its reorganization plan, Gambro decided to require anyone who wanted to work in either EQ-1 or EQ-2 positions to pass industry-approved, standardized assessment examinations that measure four skills: assembly, inspection, mechanical comprehension, and mechanical dexterity. If the pre-reorganization equipment-assembly employees did not want to take the exam or could not pass all sections of it, Gambro gave them the options of leaving the company with or without a separation package, applying for other jobs within Gambro, or moving to assembly jobs in the medical-disposables assembly area. All of the plaintiffs and most of the other equipment-assembly employees decided to apply for the EQ-1 and/or EQ-2 positions and to take the exam.

At least five of the fifteen former equipment-assembly employees (four men over forty and one woman who was 36) passed all sections of the assessment test and were offered jobs in the EQ-1 and EQ-2 categories. Three women (21, 37, and 39 years old), who were not originally employed in the equipment-manufacturing area, passed all sections of the exam and were also offered jobs in EQ-1. After these hires, the female-to-male ratio in EQ-1 was 4 women and 2 men. Both men were over forty years old. As a result of the total reorganization efforts, equipment-assembly quality dramatically improved.

None of the plaintiffs passed all sections of the skills assessments, and none were offered equipment-assembly jobs. But all of them were offered, and

accepted, positions in the medical-disposables assembly area, which they considered to be a demotion in pay grade and an alteration in the terms and conditions of their employment. Plaintiffs contended that they were discriminated against because of their sex and age by being demoted to the disposable-assembly positions and/or not being hired in the EQ-1 positions, and filed complaints with the EEOC. They received right-to-sue letters after the EEOC was "unable to conclude that the information obtained establishes violations of the statutes." Aplt. App. at 24. In their federal complaint, they also claim that Gambro retaliated against them for having asserted their claims, and they allege disparate impact as an alternate theory of discrimination. *See id.* at 20.

After extensive discovery, Gambro moved for summary judgment, contending that plaintiffs could not establish a prima facie case of discrimination based on age or sex because their failure to pass the mandatory skills assessments precluded qualification for the EQ-1 positions they desired. Alternatively, Gambro asserted that it had a valid, non-discriminatory reason for not placing plaintiffs in the EQ-1 positions—that they did not pass the mandatory assessment tests, and that no evidence supported an inference of pretext or a finding of discrimination. The district court granted summary judgment on this alternate ground.

Gambro presented evidence showing that the assessment testing did not have a disparate impact upon women or individuals over forty years of age and that it hired a greater percentage of female applicants in the position than male applicants. The district court concluded that plaintiffs had failed to make a prima facie showing that the assessment testing disparately affected women. As to the retaliation claim, Gambro asserted, and the district court agreed, that plaintiffs could not show a materially adverse employment action. Plaintiffs appeal, arguing that the district court did not apply proper summary judgment standards to their discrimination and retaliation claims and that they presented sufficient evidence of pretext and disparate impact to survive summary judgment.

### III. Analysis

We analyze the age and sex discrimination claims identically. *See Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1216 (10th Cir. 2002) (noting that the three-step analytical framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), for disparate-treatment claims brought under Title VII also applies to ADEA claims). Here, the plaintiffs presented no direct evidence of age or sex discrimination, relying instead on the *McDonnell Douglas* framework of presenting indirect evidence of discrimination.

**A. Qualification for the new positions.** "In the context of summary judgment, the *McDonnell Douglas* framework requires a plaintiff to raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." *Rakity v. Dillon Cos.*, 302 F.3d 1152, 1164 (10th Cir. 2002) (quotation marks omitted).

> In *McDonnell Douglas,* the Supreme Court enumerated the elements required in order for a plaintiff to establish a prima facie case in the failure to hire context. These are: (i) plaintiff belongs to a protected class; (ii) plaintiff applied and was qualified for a job for which the employer was seeking applicants; (iii) despite being qualified, the plaintiff was rejected; and (iv) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications.

*Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1226 (10th Cir. 2000) (quotation marks omitted). Thus, plaintiffs first had to establish a prima facie case of discriminatory demotion or failure to hire by showing that they were qualified for the EQ-1 position at issue. Indeed, not being qualified for a job is one of the two "most common nondiscriminatory reasons for [a] plaintiff's rejection." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253-54 (1981); *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).

Gambro vigorously contends, both below and on appeal, that plaintiffs did not show they were qualified for the position they sought to fill because they had not successfully passed the mandatory skills assessment test, and therefore could not make a prima facie case of discrimination. *Burdine,* 450 U.S. at 253 (noting

that, to establish a prima facie case of disparate treatment a "plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination"); *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403-04 (1977) (noting that, since "plaintiffs lacked the qualifications to be hired . . . they could have suffered no injury as a result of the alleged discriminatory practices"); *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1427 (10th Cir. 1993) ("An important prerequisite to establishing a prima facie case is that each plaintiff was qualified for the job.").

Plaintiffs argued that they were qualified for the EQ-1 positions because those positions involved essentially the same assembly work as their previous jobs and they had received good job-performance evaluations in the past. The district court held that this evidence created a genuine issue of material fact regarding qualification and denied summary judgment on this theory.

But it was undisputed that the new EQ-1 positions required the assemblers to self-inspect their work and to undergo 200 hours of formal, intensive training by engineers, which created increased workplace expectations. Thus, it was not unreasonable to require more than good, subjective past-performance evaluations in selecting the very best applicants, particularly in light of the quality problems. As the Seventh Circuit has noted,

[e]mployers, not employees or courts, are entitled to define the core qualifications for a position, so long as the criteria utilized by the company are of a nondiscriminatory nature. And there is certainly nothing inherently discriminatory about an employer's decision to use criteria other than past performance evaluations to determine whether its employees can meet the increased workplace expectations that often coincide with a corporate reorganization. *Gorence v. Eagle Food Centers, Inc.,* 242 F.3d 759, 765 (7th Cir. 2001) (noting that "[w]hat the qualifications for a position are, even if those qualifications change, is a business decision, one courts should not interfere with").

*Cerutti v. BASF Corp.*, 349 F.3d 1055, 1064-65 (7th Cir. 2003) (citation omitted). Like the Seventh Circuit, we have emphasized that we "will not second guess business decisions made by employers, in the absence of some evidence of impermissible motives." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1403-04 (10th Cir. 1988).

As mentioned above, it was undisputed that serious quality-control problems existed in the equipment-assembly area despite the fact that the employees there had been given good evaluations in the past and were considered by some to be great employees. Gambro's expert witness opined that one "fair and job-related" way to improve quality and choose the *most* qualified individuals for Gambro's EQ-1 positions was to select individuals who performed well on industry-approved, standardized tests specifically designed to measure assembly, inspection, and mechanical aptitudes and abilities. Aplt. App. at 197, 204. Plaintiffs contend that they submitted evidence to counter the expert's opinion.

-9-

But a review of the proffered evidence shows that the "evidence" was nothing more than plaintiffs' and another employee's personal opinions that the assessments did not test what they did *in the past* on a day-to-day basis. This, however, was not the purpose of the assessment tests. Plaintiffs presented no evidence that the assessments did not validly measure skills and aptitudes required in the EQ-1 and EQ-2 positions. We conclude that this testimony does not raise a genuine issue whether the assessment tests were fair and job related.

We also reject plaintiffs' claim that basing the EQ-1 qualification on the skills assessments results were invalid because there allegedly were "disturbing procedural irregularities in the testing." Aplt. Br. at 13. Despite their claims that certain of the written tests were "largely illegible" and the "typeface too small to read," all the applicants were given the same test and all of the applicants chosen for the EQ-1 and EQ-2 positions, including females and individuals over forty years old, could read it well enough to pass it. This is not the type of disturbing procedural irregularity that may give rise to a jury question regarding intent to discriminate. *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1138 n.11 (10th Cir. 2003) (recognizing "deviations from normal company procedure" as evidence of a "disturbing procedural irregularit[y]") (quotation marks omitted); *Simms*, 165 F.3d at 1328 (listing "falsifying or manipulating hiring criteria" as examples of "disturbing procedural irregularities").

Before even conducting the skills assessments, Gambro decided that passing those tests with a minimum score would be a mandatory requirement for qualification for the EQ-1 and EQ-2 positions.  It is undisputed that the same assessment tests were administered to all applicants for the EQ-1 positions, regardless of age or sex; that only those applicants who passed the test with a minimum score were offered EQ-1 jobs; and that all displaced equipment-assembly employees over forty and females who passed the assessment were offered EQ-1 positions.  Under these facts, as a matter of law plaintiffs cannot make a prima facie case of employment discrimination because they were not qualified to apply for the positions.  *See Faulkner*, 3 F.3d at 1427.  Therefore, summary judgment was properly granted to Gambro on the issues of intentional age and sex discrimination.  *See Ross v. U.S. Marshal*, 168 F.3d 1190, 1194 n.2 (10th Cir. 1999) (court may affirm the district court's judgment on ground not relied on by the district court if supported by the record, "provided the litigants have had a fair opportunity to develop the record") (quotation marks omitted).  We need not address all of plaintiffs' arguments regarding pretext.  *See Simms*, 165 F.3d at 1328 (noting that only after the plaintiff has met his prima facie burden is a discriminatory intent presumed, which then shifts the burden to the defendant to "articulate a facially nondiscriminatory reason for the challenged employment action") (quotation marks omitted).

**B. Retaliation.** The district court dismissed plaintiffs' retaliation claim because their allegations did not rise to the level of a materially adverse employment action sufficient to satisfy their burden of showing that Gambro altered their compensation, terms, conditions, or privileges of employment or adversely affected their status as employees. *See* Aplt. App. at 899. Plaintiffs complain that the court ignored evidence. Specifically they assert that, after the decision not to hire one of the plaintiffs in an EQ-1 position had already been made and she asked to have her lawyer present in conversations about an optional separation package, Gambro's vice-president asked, "What do you want? Do you want money or a better job? . . . You can't have your job back, and let's not get the lawyers involved in this." Aplt. App. at 461, 463; Aplt. Br. at 49. Plaintiffs assert that this statement, in the context of the situation, provides sufficient evidence of retaliation to avoid summary judgment. We disagree. "[N]ot everything that makes an employee unhappy qualifies as retaliation." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1998) (quotation marks omitted). The plaintiff to whom this comment was allegedly made ended up accepting employment in the medical-disposables assembly department and choosing not to terminate her employment. Suggesting that the parties work out a satisfactory resolution without involving lawyers was not a retaliatory act that affected her employment status and, therefore, did not constitute an adverse employment

-12-

action. *See id.* The district court properly granted summary judgment on the retaliation claim.

**C. Disparate impact.** Disparate impact is an alternate theory for recovery for discrimination. *Coe v. Yellow Freight Sys., Inc.*, 646 F.2d 444, 448 (10th Cir. 1981). A disparate impact claim may be established when a plaintiff shows that a facially neutral employment practice falls "more harshly on one group than another and cannot be justified by business necessity." *Id.* (quotation marks omitted). The district court held that plaintiffs had not supplied sufficient evidence of disparate impact because "[t]he only evidence presented by Plaintiffs on this subject is that Plaintiffs' 'replacements' were 'mostly young and men,'" which was insufficient "to create a genuine issue for trial." Aplt. App. at 897.

Plaintiffs allege that the district court "strain[ed] to grant summary judgment" by ignoring their evidence. Aplt. Br. at 45-46. They point to a document showing the names and other information regarding eighteen current employees in the whole equipment-assembly area. But the plaintiffs only applied for the six positions available in the EQ-1 area, choosing not to apply for the EQ-2 and EQ-3 positions. The document therefore is not relevant to their disparate-impact claim. *Cf. Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 650-51 (1989) ("It is such a comparison—between the racial composition of the qualified persons in the labor market and the persons holding at-issue jobs—that

generally forms the proper basis for the initial inquiry in a disparate-impact case."). As the district court pointed out, Gambro provided undisputed evidence that

> *as to the EQ-1 positions applied for by Plaintiffs*, Defendant hired four women for the six positions, and in fact hired approximately 19% of the women who applied and only 7% of the men who applied for these positions. . . . [S]ix out of twenty-seven women (approximately 22%) received jobs in the reorganized Equipment Manufacturing, while twelve out of sixty-five men (approximately 18%) received jobs in reorganized Equipment Manufacturing.

Aplt. App. at 897 (emphasis added). The district court properly granted summary judgment on the disparate-impact claim.[2]

Plaintiffs' motion to amend the sub-heading in their reply brief is GRANTED. The judgment of the district court is AFFIRMED.

---

[2] Plaintiffs do not appeal from the dismissal of the disparate-impact claim based on age.