**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 15, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

VALERIE ANN GRIFFITHS-RAST,

Plaintiff-Appellant,

v.

SULZER SPINE TECH, a Minnesota
corporation also known as Zimmer
Spine; PRAVEEN G. PRASAD,
an individual,

Defendants-Appellees.

No. 05-4279
(D.C. No. 2:02-CV-1267-DAK)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **HOLLOWAY**, and **BALDOCK**, Circuit Judges.

Plaintiff-appellant Valerie Ann Griffiths-Rast appeals the district court's

grant of summary judgment to defendants-appellees Sulzer Spine Tech (Sulzer)

and Praveen G. Prasad, M.D.  Ms. Griffiths-Rast underwent a back surgery on

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

August 3, 1998, during which Dr. Prasad implanted a "BAK Cage" manufactured by Sulzer into Ms. Griffiths-Rast's spine. Ms. Griffiths-Rast subsequently served Dr, Prasad with a notice of intent to commence action on November 26, 2001, and filed her complaint on November 26, 2002, alleging a violation by Dr. Prasad, of the Utah Health Care Malpractice Act, Utah Code Ann. §§ 78-14-1 through 78-14-16 (1998), and a violation by Sulzer of the Utah Product Liability Act, Utah Code Ann. §§ 78-15-1 through 78-15-6 (1998). The district court granted summary judgment to Dr. Prasad on the ground that the claim against him was barred by the two-year statute of limitation found in § 78-14-4(1) and that the limitation period in that statute was not tolled by application of § 78-12-35. The district court granted summary judgment to Sulzer on the ground that the claim against it was barred by the two-year statute of limitation found in § 78-15-3. Ms. Griffiths-Rast appealed, and we exercise our jurisdiction under 28 U.S.C. § 1291 and affirm.

## A. Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

-2-

that the moving party is entitled to a summary judgment as a matter of law."

Fed. R. Civ. P. 56(c). A statute of limitation defense is an affirmative defense.

*See* Fed. R. Civ. P. 8(c). Where a defendant seeks summary judgment on the

basis of an affirmative defense,

> [t]he defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted. If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact. If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law.

*Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) (citations omitted).

### B. Claim Against Dr. Prasad

Under § 78-14-8:

> No malpractice action against a health care provider may be initiated unless and until the plaintiff gives the prospective defendant or his executor or successor, at least ninety days' prior notice of intent to commence an action.

Ms. Griffiths-Rast served Dr. Prasad a notice of intent to commence action on

November 26, 2001. The district court granted Dr. Prasad summary judgment on

the ground that the two-year malpractice statute of limitation barred

Ms. Griffiths-Rast's claim because she should have discovered her legal injury

prior to November 26, 1999. It further held that the limitation period was not

tolled by any periods of time during which Dr. Prasad was absent from the state

of Utah. Ms. Griffiths-Rast argues that the grant of summary judgment was

-3-

improper because a reasonable jury could have found (1) that the two-year statute of limitation should not have begun to run until July 2, 2001, the date she claims she discovered her legal injury, and (2) that the limitation period was tolled by § 78-12-35.

## 1. Discovery of Legal Injury

Under § 78-14-4(1):

> No malpractice action against a health care provider may be brought unless it is commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the injury, whichever first occurs, but not to exceed four years after the date of the alleged act, omission, neglect or occurrence.

The two-year statute of limitation in this section begins to run when "the injured person knew or should have known that [she] had sustained an injury and that the injury was caused by negligent action." *Foil v. Ballinger*, 601 P.2d 144, 148 (Utah 1979). "[D]iscovery of legal injury, therefore, encompasses both awareness of physical injury and knowledge that the injury is *or may be attributable to negligence*." *Collins v. Wilson*, 984 P.2d 960, 966 (Utah 1999) (quotation omitted). "[A]ll that is required to trigger the statute of limitations is sufficient information to put plaintiff[] on notice to make further inquiry if [she] harbors doubts or questions." *Macris v. Sculptured Software, Inc.*, 24 P.3d 984, 990 (Utah 2001).

Ms. Griffiths-Rast testified in her deposition that "immediately after the [August 3, 1998, surgical] procedure," while she was still in the hospital recovering, she felt that there was a problem with the cage implantation, and there was a problem with what Dr. Prasad did, and that "[e]verything went wrong." Aplt. App., Vol. 1 at 77-78, 80. Ms. Griffiths-Rast also testified that she contacted a lawyer about the problems with her back surgery "a couple of weeks after [her] surgery" when she "wasn't getting any better," and that she signed an agreement retaining the attorney's services at that time. *Id*. at 104. Further, on November 10, 1998, another doctor informed Ms. Griffiths-Rast that there was a defect with the cage implantation. *Id*., Vol. 2 at 204-05, 210. Ms. Griffiths-Rast produced no evidence in response to Dr. Prasad's summary judgment motion to refute these facts, admitting that she had discovered the malpractice in November 1998. *See* Aplt. App., Vol. 2 at 210.[1]

Nevertheless, Ms. Griffiths-Rast argues that she did not discover her legal injury until July 2, 2001, when she received a report from a Dr. Stephen Wood stating that he had been told by the Utah Malpractice Insurance association that "there have been numerous malpractice suits filed due to complications resulting from 'The Cage' . . . [and that he] ha[d] been told that the procedure is no longer recommended." Aplt. App. at 200. Ms. Griffiths-Rast argues that the

---

[1] The argument presented in her response was that she discovered the malpractice in November 1998. *See* Aplt. App. at 210.

determination of when she discovered her legal injury is a factual question not suitable for summary judgment.

Ms. Griffiths-Rast misinterprets the summary judgment standard. The question is whether there is a "*genuine* issue as to any material fact," Fed. R. Civ. P. 56(c) (emphasis added), and "an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant," *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Here, no reasonable jury could find that Ms. Griffiths-Rast did not have sufficient information to put her on notice to conduct a further inquiry into whether there was malpractice until after November 26, 1999. In fact, she admitted that she believed that there was something wrong with Dr. Smith's performance immediately after the August 1998 surgery and that she hired an attorney a couple of weeks later to conduct an inquiry into possible malpractice.

## 2. Tolling of Statute of Limitation

Ms. Griffiths-Rast argues in the alternative that even if she was aware of her legal injury prior to November 26, 1999, the limitation period should have been tolled for some of that time because (1) Dr. Prasad conducted business outside of Utah for periods of time between her surgery and September 2000, and (2) Dr. Prasad moved from Utah to California in September 2000. Under § 78-12-35:

> Where a cause of action accrues against a person when he is out of the state, the action may be commenced within the term as limited by this chapter after his return to the state. If after a cause of action accrues he departs from the state, the time of his absence is not part of the time limited for the commencement of the action.

Ms. Griffiths-Rast argues that it is a disputed genuine issue of fact whether Dr. Prasad was absent for enough time so that tolling the statute of limitation for that period of time would result in the statue not being violated. She argues that the district court should have conducted a separate trial to decide this issue.

The district court held that medical malpractice actions were excepted from the tolling provision of § 78-12-35 because under § 78-14-4(2) the two-year limitation period "shall apply to all persons, regardless of minority or other legal disability under Section 78-12-36 or *any other provision of the law*." (emphasis added). The court held that this provision was an "explicit exception to section 78-12-35" and that the limitation period was not tolled during Dr. Prasad's absences. We agree.

Ms. Griffiths-Rast argues on appeal that the tolling provision in § 78-12-35 is applicable despite the language in § 78-14-4(2). She first directs us to *Jensen v. IHC Hospitals, Inc.*, 944 P.2d 327, 333 n.3 (Utah 1997). In that footnote, the Utah Supreme Court noted that the family of a woman who allegedly died of malpractice argued that they should be able to file her suit outside the two-year statute of limitation because under § 78-12-37:

> [I]f a person entitled to bring an action dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced by [her] representatives after the expiration of that time and within one year from [her] death.

The Utah Supreme Court ruled against the family on the ground that the statute of limitation had run prior to the woman's death. *Jensen* therefore does not support Ms. Griffiths-Rast's argument. A ruling that § 78-12-37 did not apply because the limitation period expired prior to the decedent's death, is *not* the same as ruling that § 78-12-37 *would* have applied if the limitation period had not expired. There is no indication that the court even considered the effect of § 78-14-4(2) on § 78-12-37.

Ms. Griffiths-Rast also argues that the Utah Supreme Court found that § 78-14-4(2) was unconstitutional as applied to minors. In *Lee v. Gaufin*, 867 P.2d 572, 580-81 (Utah 1993), the court found that § 78-14-4(2) created an exception to § 78-12-36, which generally tolls limitation periods as to claims of minors until the minor reaches the age of majority. Since Ms. Griffiths-Rast's brief does no more than note that *Lee* found § 78-14-4(2) unconstitutional in that it nullified § 78-12-36, we can only assume that she is asserting, without argument, that it is also unconstitutional when applied to nullify to § 78-12-35. We disagree.

The Utah Supreme Court's holding in *Lee* was premised on the fact that, since minors had no legal capacity to sue in Utah, application of § 78-14-4(2) in

-8-

some cases would result in the statute of limitation running prior to the minor coming of age and being legally able to bring his or her action. *Lee*, 867 P.2d at 580. Consequently, application of § 78-14-4(2) would deprive some minors of access to the court system. *Id.* Here, there is no such problem. Considering the provisions of Fed. R. Civ. P. 4(e), Utah R. Civ. P. 4, and Utah's long-arm statute, § 78-27-24,[2] it is clear that a potential defendant's flight to another state will not

---

[2] Under Fed. R. Civ. P. 4(e):

Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed . . . may be effected in any judicial district of the United States:

(1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or

(2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Under the pertinent parts of Utah R. Civ. P. 4(d)(1):

(d)(1) Personal service. The summons and complaint may be served in any state or judicial district of the United States . . . . If the person to be served refuses to accept a copy of the process, service shall be sufficient if the person serving the same shall state the name of the process and offer to deliver a copy thereof. Personal service shall be made as follows:

(d)(1)(A) Upon any individual . . . by delivering a copy of the

(continued...)

-9-

immunize him from suit. Dr. Prasad was himself served with process after he moved to California.[3]

---

[2](...continued)

> summons and the complaint to the individual personally, or by leaving a copy at the individual's dwelling house or usual place of abode with some person of suitable age and discretion there residing, or by delivering a copy of the summons and the complaint to an agent authorized by appointment or by law to receive service of process[.]

Under the pertinent parts of § 78-27-24:

> Any person . . . whether or not a citizen or resident of [Utah], who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of [Utah] as to any claim arising out of or related to:
>
> (1) the transaction of any business within this state;
>
> (2) contracting to supply services or goods in this state;
>
> (3) the causing of any injury within this state whether tortious or by breach of warranty;

[3]      Ms. Griffiths-Rast also raises a brief argument that under § 78-14-8 she was entitled to a 120-day enlargement of the four-year limitation period imposed by the statute of repose found in § 78-14-4(1). This argument is meritless. First, the district court held that Ms. Griffiths-Rast's action was barred under the malpractice act's two-year statute of limitation, not the four-year statute of repose. Second, under § 78-14-8, a malpractice action may not be commenced unless the prospective defendant is given notice of the plaintiff's intent to commence an action at least ninety days prior to the filing of the suit. If the notice is served "less than ninety days prior to the expiration of the applicable time period, the time for commencing the malpractice action against the health care provider shall be extended to 120 days from the date of service of the notice." *Id*. Ms. Griffiths-Rast served her notice of intent in November of 2001.

(continued...)

-10-

## C.  Claim Against Sulzer

Under § 78-15-3, a legal action under the Utah Product Liability Act:

"shall be brought within two years from the time the individual who would be the claimant in such action discovered, or in the exercise of due diligence should have discovered, both the harm and its cause."  The Utah Court of Appeals has held that because the statute of limitation in § 78-15-3 runs from the time the plaintiff discovered or should have discovered both the harm and its "cause," the reference to "cause" in that section "tolls the running of the statute of limitation until the plaintiff discovers, or in the exercise of due diligence should have discovered, the identity of the manufacturer."  *Aragon v. Clover Club Foods Co.*, 857 P.2d 250, 253 (Utah Ct. App. 1993).  Because Ms. Griffiths-Rast did not file her complaint until November 26, 2002, her claim is barred unless she did not discover, or in the exercise of due diligence should not have discovered, that the BAK Cage had injured her and that Sulzer manufactured the BAK Cage until after November 26, 2000.

Ms. Griffiths-Rast testified that she felt as if there was a problem with the cage implantation while she was in the hospital immediately after her surgery on August 3, 1998; that the BAK Cage hurt and "felt" like it was "defective"; and

[3](...continued)
Ms. Griffiths-Rast *admitted* that she discovered her legal injury in November of 1998.  Therefore, even if the date that she admitted discovery is used, the two-year statute of limitation period ran in November 2000, a year prior to the filing of her notice.

that she had been able to feel that the BAK Cage was defective since its implantation. Aplt. App., Vol. 1 at 80-81, 101-02. Because all that is required to start the running of the limitation period is information sufficient to put the plaintiff on notice to make further inquiry," *Macris*, 24 P.3d at 990, we don't believe a reasonable jury could find that Ms. Griffiths-Rast should not have discovered with the exercise of due diligence that the BAK Cage had injured her until after November 26, 2000.

The more difficult question is whether, as a matter of law, through the exercise of due diligence, she should have discovered that Sulzer was the manufacturer of the BAK Cage prior to November 26, 2000. The district court correctly noted in another case that "[g]enerally, the question of when a plaintiff knew, or with reasonable diligence should have known, of a cause of action is a question of fact for the jury." *McCollin v. Synthes Inc.*, 50 F. Supp. 2d 1119, 1123 (D. Utah 1999). As noted above, however, the relevant question is whether there is a "*genuine* issue as to any material fact," Fed. R. Civ. P. 56(c) (emphasis added), and "an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant," *Garrison*, 428 F.3d at 935. The district court held that no reasonable jury could find that Ms. Griffiths-Rast had exercised due diligence in discovering that Sulzer was the manufacturer of the BAK Cage, and that "her claim against Sulzer-Spine was not tolled by her failure to discover its identity." Aplt. App., Vol. 2 at 361.

On appeal, Ms. Griffiths-Rast argues again that she did not discover that she had a legal injury until July 2, 2001, when Dr. Wood's letter told her about other malpractice claims that had been raised. Once she discovered that she had a legal injury, she "first commenced the medical malpractice portion of her suit before proceeding with the products liability aspect" of her suit. Br. of Aplt. at 35. She alleges that she did not begin her product liability case at the same time as her medical malpractice case because "she needed confirmation from Dr. Prasad [regarding] who the manufacturer was." *Id.* She argues that given the "fact" that she did not discover her legal injury until July 2, 2001, and that she did not discover that Sulzer manufactured the BAK Cage until October 4, 2002, "[a] reasonable jury [could] find . . . that she did not reasonably discovery [sic] the name of the manufacturer of the BAK™ Cage until October 2002." Br. of Aplt. at 39-40.

We disagree. As properly noted by the district court, "[w]hat constitutes due diligence must be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so." *Aragon*, 857 P.2d at 253 (quotation omitted). It seems clear that in a normal case a reasonable jury could not find that it would take over two years to determine the manufacturer of a trademarked medical

device when the party knows the correct name of that device.[4] The question then becomes whether Ms. Griffiths-Rast presented evidence that would allow a reasonable jury to find that even if she had used "diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so," *Aragon*, 857 P.2d at 253, she should not have ascertained the identity of the manufacturer prior to November 26, 2000. She presented no such evidence.

In fact, Ms. Griffiths-Rast presented the district court with the affidavit of a paralegal that worked for her attorney to help explain why it had taken four years to determine the manufacturer of the BAK Cage. The paralegal averred that the firm had contracted with an outside "nurse paralegal" who "was employed to research the claims against the doctor." Aplt. App. at 316. According to the affiant, the nurse paralegal "provided some internet literature" for a "LT-Cage," and that Ms. Griffiths-Rast's attorney was "led to believe that the LT-Cage was a recently approved Cage from the same manufacturer of the BAK Cage." *Id*. According to Ms. Griffiths-Rast, she and her attorney went to the October 2002 meeting with Dr. Prasad, "with literature concerning a the [sic] LT-Cage product manufactured by different [sic] company believing that was the product implanted

_____

[4]    Sulzer presented the consent form signed by Mr. Griffiths-Rast showing that she was going to have spinal fusion surgery with "BAK cages." Aplt. App., Vol. 2 at 332, 341. In Ms. Griffiths-Rast's appellate brief, she notes that one of the "assumptions" that she had made, that Dr. Prasad eventually corrected, was that the "BAK" in BAK Cage was a typographical error for the word "back." Br. of Aplt. at 35.

into her," and Dr. Prasad informed them that they had the wrong device.

Consequently, the evidence presented to the district court did not show that because of the circumstances of the case a reasonable jury could have found that with the exercise of due diligence she should not have discovered that Sulzer manufactured the BAK Cage until after November 26, 2000. It showed instead that because the outside nurse paralegal led her attorney to the misunderstanding that the "LT-Cage" and the BAK Cage were made by the same company, she misidentified the manufacturer and proceeded under that misidentification until the October 2002 meeting with Dr. Prasad.

It is true that Ms. Griffiths-Rast noted in the district court that Sulzer had gone through a number of company name changes and was a foreign corporation without a registered agent in Utah. She made no argument, however, that these facts impeded her ability to identify Sulzer as the manufacturer of the BAK Cage. Consequently, we see no error in the district court's grant of summary judgment on this issue.

## D. Conclusion

For the reasons set forth above, the district court's grant of summary judgment to Dr. Prasad and Sulzer is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge