**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 15-1441**

———————————

BRENDA L. ROBINSON; REX ROBINSON,

                Plaintiffs – Appellants,

        v.

BOSTON SCIENTIFIC CORPORATION,

                Defendant – Appellee.

———————————

Appeal from the United States District Court for the Southern
District of West Virginia, at Charleston.  Joseph R. Goodwin,
District Judge.  (2:12-cv-03700)

———————————

Argued:  March 22, 2016          Decided:  April 26, 2016

———————————

Before SHEDD, THACKER, and HARRIS, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED**: Jessica Ann Kasischke, FLEMING, NOLEN & JEZ, L.L.P.,
Houston, Texas, for Appellants.  Daniel Brandon Rogers, SHOOK,
HARDY & BACON L.L.P., Miami, Florida, for Appellee.  **ON BRIEF**:
Karen Beyea-Schroeder, Sylvia Davidow, Kelsey L. Stokes,
FLEMING, NOLEN & JEZ, L.L.P., Houston, Texas, for Appellants.
Michael Bonasso, Charleston, West Virginia, Lindsey M. Saad,
FLAHERTY SENSABAUGH & BONASSO PLLC, Morgantown, West Virginia,
for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Brenda and Rex Robinson[1] appeal the grant of summary judgment in favor of Boston Scientific Corporation. The district court concluded that the Robinsons' claims are barred by Utah's two-year statute of limitations for product liability actions. We affirm, albeit on slightly different reasoning.

## I.

Brenda Robinson, a Utah resident, sought treatment from Dr. Clayton Wilde, an OB/GYN, for urinary stress incontinence and urinary tract infections. In June 2006, Dr. Wilde recommended implantation of a transvaginal surgical mesh to alleviate her symptoms. A transvaginal surgical mesh implant treats medical conditions of the female pelvis, most commonly pelvic organ prolapse and stress urinary incontinence. The mesh is implanted into the anterior vaginal wall to help restore a woman's regular anatomy. Robinson consented to the procedure, and Dr. Wilde implanted her with Boston Scientific's Obtryx sling in Salt Lake City.

During a post-surgical examination, Dr. Wilde instructed Robinson that she should "avoid intercourse for another month and try to make sure that she doesn't get any pressure on her

---

[1] Because Rex Robinson's claims are derivative of his wife's, we refer only to Brenda Robinson unless otherwise noted.

2

anterior vaginal wall and promote an erosion." (J.A. 611). At another post-surgical visit, Dr. Wilde noted that he discussed possible mesh erosion "most likely related to intercourse." (J.A. 611).

Several months later, in January 2007, Robinson returned due to continued urinary problems as well as pain during sexual intercourse (dyspareunia). During a visit on April 25, 2007, Dr. Wilde noted some erosion of the tape and Robinson recalled Dr. Wilde telling her that the mesh was "hanging down a little." (J.A. 318). Dr. Wilde recommended trimming the mesh and, in May 2007, conducted a revision surgery to remove the eroded portion of the mesh. In his deposition, Dr. Wilde expressed his belief that in cases where the mesh did not work as hoped, the erosion was:

> [D]irectly related to two things: Number one is the person's estrogen status. People who have low estrogen, who have thin vaginal mucosa, their mucosa does not heal well and doesn't have good blood supply to it.
>
> And the second one is intercourse, which is as a problematic event because you're better off having these people not have intercourse for three months, but that's unacceptable to their partner.
>
> And one of the things—and I did that with her, was told her that she shouldn't have intercourse for a more extended period of time. It does not allow the mucosa to grow over and get good and thick. It just keeps getting roughed off.

(J.A. 595).

3

Following the revision surgery, Robinson continued to seek treatment for symptoms, including bleeding, dyspareunia, urinary tract infections, and incontinence. Robinson's husband likewise explained that "it got worse again as time went on," (J.A. 193), and that the mesh "felt sharper and sharper," (J.A. 195).

In February 2012, almost five years after her revision surgery, Robinson saw a television advertisement about complications from transvaginal surgical mesh. In response, Robinson sought a second opinion about her mesh and eventually had the entire mesh extracted. Shortly after the extraction surgery, Robinson commenced this action for actual and punitive damages against Boston Scientific in the United States District Court for the District of Utah for negligence, strict liability design defect, manufacturing defect, failure to warn, breach of express and implied warranties under the Utah Product Liability Act (UPLA). Her husband brought a derivative action for loss of consortium. The case was transferred to the Multi-District Litigation (MDL) in the Southern District of West Virginia for pretrial proceedings.

Following discovery, Boston Scientific moved for summary judgment, arguing that all of Robinson's claims are barred by Utah's two-year statute of limitations for defective products. The district court granted that motion, concluding that the two-year limitations period began to run on April 25, 2007, when Dr.

4

Wilde told Robinson that the mesh was hanging down and causing the dyspareunia. In re Boston Scientific Corp., 2015 WL 1466746 (S.D. W.Va. 2015). The district court also found Mr. Robinson's derivative claims are barred. The Robinsons timely appealed.

                                    II.

We review the grant of summary judgment de novo. Wilkins v. Montgomery, 751 F.3d 214, 220 (4th Cir. 2014). The parties agree that Utah substantive law governs this diversity action. The UPLA provides:

> A civil action under this part shall be brought within two years from the time the individual who would be the claimant in the action discovered, or in the exercise of due diligence should have discovered, both the harm and its cause.

U.C.A. § 78B-6-706 (2008).

Under Utah law, "all that is required to trigger the statute of limitations is sufficient information to put plaintiffs on notice to make further inquiry if they harbor doubts or questions." Macris v. Sculptured Software, Inc., 24 P.3d 984, 990 (Utah 2001). In cases involving defective products, the limitations period begins to run when a plaintiff knows or should know: (1) that she has been injured; (2) the identity of the maker of the allegedly defective product; and (3) that the product had a possible causal relation to her injury. Aragon v. Clover Club Foods Co., 857 P.2d 250, 252-53 (Utah Ct. App. 1993).

Robinson argues that the district court misconstrued Utah law by failing to require Boston Scientific to show that she knew the mesh was the cause-in-fact of her injury. Robinson also argues that, even under the "possible causal relation" standard employed by the district court, she has raised a genuine issue of material fact as to whether she should have known, on April 25, 2007, that the mesh was a possible cause of her harm.[2]

For purposes of this appeal, we will accept Robinson's argument that, under Utah law, "possible causal relationship" refers to the cause-in-fact. Even accepting Robinson's view of Utah law, however, we conclude that her claims are untimely. As the nonmoving party at summary judgment, Robinson is entitled to all reasonable inferences in her favor. T-Mobile Northeast, LLC v. City Council of Newport News, 674 F.3d 380, 384-85 (4th Cir. 2012). In this case, that includes the reasonable inference that, during the April 25, 2007, office visit, Dr. Wilde informed Robinson that the mesh was hanging down but linked the erosion to Robinson's own actions—her resumption of sexual intercourse with her husband before the healing process was complete—rather than a product defect. Dr. Wilde's comments to

---

[2] Robinson makes two additional arguments: that the district court improperly applied the summary judgment standard and that she raised a genuine issue of material fact as to the identity of the manufacturer. We have reviewed these claims and find them to be without merit.

6

Robinson on that date thus might not have led Robinson to believe that the mesh was the cause-in-fact of her harm.

However, Dr. Wilde also told Robinson that the revision surgery would alleviate these symptoms. Despite this assurance, after Dr. Wilde performed the revision surgery in May 2007 Robinson continued to have the same symptoms. Specifically, both Robinson and her husband continued to have dyspareunia and her husband could still feel the mesh. At this point, Robinson was on inquiry notice of a possible causal relationship between the mesh and her harm. In other words, when the revision surgery failed to correct her symptoms, Robinson had "sufficient information" to put her "on notice to make further inquiry" about the cause-in-fact of her harm. Macris, 24 P.3d at 990.[3]

At the very least, Robinson had sufficient information by the end of 2007 when the revision surgery failed to correct her

---

[3] Robinson's argument to the contrary—that her limitations period did not begin until she became subjectively aware that the mesh was causing her harm in 2012—contradicts Utah's purpose in imposing a statute of limitations: "to compel the exercise of a right of action within a reasonable time and to suppress stale and fraudulent claims so that claims are advanced while evidence to rebut them is still fresh." Craftsman Builder's Supply, Inc. v. Butler Mfg. Co., 974 P.2d 1194, 1198 (Utah 1999) (internal quotation marks omitted). In Robinson's view, the advertisement was happenstance. Had she not seen it (or something like it), her limitations period would have remained tolled until the date she did, regardless of when (if ever) that might occur. That potential for open-endedness runs afoul of Utah's desire to compel actions in a "reasonable time."

7

symptoms. By that point, Robinson was on inquiry notice that the mesh could be the cause-in-fact of her harm and was required to perform due diligence to determine if it was the actual cause.[4] Accordingly, her claims, and her husband's derivative claims, are barred by Utah's two-year statute of limitations.

                                III.

For the foregoing reasons, the judgment of the district court is affirmed.

                                                    AFFIRMED

---

[4] Because the cause-in-fact standard is more stringent than the possible cause standard the district court applied, it follows that, if Robinson was on inquiry notice that the sling was a cause-in-fact by the end of 2007, she was also on notice that it was a possible cause.