**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 25, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GERRY A. ADAMS,

     Plaintiff - Appellant,

v.

AMERICAN MEDICAL SYSTEM, INC.,

     Defendant - Appellee,

and

CALDERA MEDICAL, INC.,

     Defendant.

No. 14-4057
(D.C. No. 2:13-CV-00604-TS)
(D. Utah)

_____

**ORDER AND JUDGMENT***
_____

Before **TYMKOVICH**, Chief Judge, and **EBEL**, Circuit Judge.[1]
_____

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The Honorable Neil Gorsuch participated in the oral argument but not in the decision in this case. The practice of this court permits the remaining two panel judges, if in agreement, to act as a quorum in resolving the appeal. See 28 U.S.C. § 46(d); see also United States v. Wiles, 106 F.3d 1516, 1516 n.* (10th Cir. 1997) (noting that this court allows remaining panel judges to act as a quorum to resolve an appeal). In this case, the two remaining panel members are in agreement.

In this product liability case governed by Utah law, Plaintiff-Appellant Gerry Adams alleged that a mesh sling that she had surgically implanted to treat stress urinary incontinence was defective. The question presented in this appeal is whether Adams's product liability claims are barred by the applicable statute of limitations. That statute required Adams to bring her claims within two years after she discovered, or in the exercise of due diligence should have discovered, her "harm and its cause." Utah Code § 78B-6-706. We conclude that Adams knew, or should have known, by November 2007—when she was told she had to undergo a second operation to remove part of the mesh sling in order to remedy severe pain and bleeding—that she had been harmed by the sling. Because Adams did not assert her product liability claims until five and one-half years later, those claims are now time-barred. Therefore, having jurisdiction under 28 U.S.C. § 1291, we AFFIRM the district court's decision to dismiss Adams's claims under Fed. R. Civ. P. 12(b)(6).

## I. BACKGROUND

In reviewing the district court's Rule 12(b)(6) dismissal of Adams's claims, we accept her well-pled factual allegations as true and construe those facts in the light most favorable to her, see Pace v. Swerdlow, 519 F.3d 1067, 1073 (10th Cir. 2008); we also consider the medical records that Adams attached to her amended complaint, see Free Speech v. Fed. Election Comm'n, 720 F.3d 788, 792 (10th Cir. 2013). Doing so, the record before us indicates the following: Defendants American Medical System, Inc. and Caldera Medical, Inc. "manufactured, designed, and distributed the Desara Sling System." (J.A. at 27 ¶ 15.) In July 2007, doctors

2

surgically implanted a Desara mesh sling into Adams's pelvic area in order to treat her stress urinary incontinence.

Several months after this surgery, Adams complained of severe pain and vaginal bleeding. In November 2007, one of her doctors discovered that a portion of the sling had migrated and was "protruding into the vaginal canal" and "need[ed] to be excised" "as much as possible." (Id. at 59.) One month later, in December 2007, Adams underwent a second surgery during which her surgeon excised "nearly 2 cm of the" mesh sling. (Id. at 33 ¶ 57.) After that second surgery, Adams's stress incontinence was "worse than before" the sling was implanted (id. at 34 ¶ 58), and "[s]he continued to suffer severe complications from the" sling (id. ¶ 60), including "vaginal pain, vaginal bleeding, painful intercourse, incontinence and severe infections" occurring "every couple of months" (id. at 33 ¶ 54; 72). In February 2013, Adams saw a new doctor, who discovered "two pieces of mesh protruding through [Adams's] vaginal roof" (id. at 71), and recommended that the sling "be completely removed, because it continues to migrate from its place of implantation, is harboring infections, and is adversely affecting Ms. Adams's health and comfort" (id. at 34 ¶ 64).

Adams initiated this litigation in June 2013, which was soon after her new doctor's recommendation that the entire sling be removed, but six years after the mesh sling was surgically implanted and five and one-half years after the second surgery, in December 2007, to excise a portion of the sling. The district court granted Defendants' Rule 12(b)(6) motions to dismiss, ruling that Adams's claims

3

were barred by Utah's two-year statute of limitations for product liability claims. Adams appeals that decision.[2] While this appeal was pending, Adams and Caldera settled her claim against it, and at the request of those two parties, Caldera has now been dismissed from this appeal with prejudice. In light of that, American Medical System remains as the only appellee.[3]

## II. STANDARD OF REVIEW

We review the district court's Rule 12(b)(6) decision de novo. See Pace, 519 F.3d at 1073. In this diversity case, the parties agree that Utah substantive law governs. "As a federal court sitting in diversity, [then,] our task is simply to ascertain and apply [Utah] law, attempting to predict what the state's highest court would do if faced with the specific issues before us on appeal." Flores v. Monumental Life Ins. Co., 620 F.3d 1248, 1250 (10th Cir. 2010) (internal quotation marks omitted).

## III. DISCUSSION

The parties agree that the statute of limitations that applies to Adams's claims is Utah Code § 78B-6-706, which provides that "[a] civil action under [Utah's Product Liability Act] shall be brought within two years from the time the individual who would be the claimant in the action discovered, or in the exercise of due

---

[2] We GRANT the parties' joint motion to seal volume II of the Joint Appendix.

[3] Adams's now-settled appeal of the dismissal of her claim against Caldera was stayed by the United States District Court for the Central District of California. In light of that, this Court also stayed Adams's appeal of the dismissal of her claim against American Medical System. Adams has now indicated that that portion of her appeal can proceed. In light of that, the Court lifts its stay of this appeal.

diligence should have discovered, <u>both the harm and its cause</u>."  (Emphasis added.)

<u>See generally</u> <u>Elm Ridge Expl. Co. v. Engle</u>, 721 F.3d 1199, 1210 (10th Cir. 2013)

(applying state statute of limitation in diversity action).  Because § 78B-6-706

requires a plaintiff to exercise due diligence in discovering the harm and its cause,

"all that is required to start the running of the limitation period is information

sufficient to put the plaintiff on notice to make further inquiry."  <u>Griffiths-Rast v.</u>

<u>Sulzer Spine Tech</u>, 216 F. App'x 790, 795 (10th Cir. 2007) (unpublished) (quoting

<u>Macris v. Sculptured Software, Inc.</u>, 24 P.3d 984, 990 (Utah 2001), and applying

Utah Code § 78-15-3, the predecessor to § 78B-6-706); <u>see also</u> <u>Ziots v. Stryker</u>

<u>Corp.</u>, 655 F. App'x 622, 625 (10th Cir. 2016) (unpublished).[4]  The assertion that a

claim is barred by the relevant statute of limitations is an affirmative defense, which

the defendant bears the burden of proving.  <u>See</u> Utah R. Civ. P. 8(c), 9(h).  <u>See</u>

<u>generally</u> <u>Cahill v. Am. Family Mut. Ins. Co.</u>, 610 F.3d 1235, 1238 (10th Cir. 2010)

(applying state burden of proof to issues underlying statute-of-limitations defense).

**A.  Adams discovered that she had been harmed no later than November 2007**

Section 78B-6-706's two-year limitations period did not begin to run until

Adams discovered, or in the exercise of due diligence should have discovered, that

she had been harmed.  The relevant "harm is the physical injury or illness suffered by

the plaintiff as a result of the defendant's conduct."  <u>Griffith-Rast v. Sulzer Spine</u>

---

[4] In 2008, the Utah legislature renumbered the two-year statute of limitations for product liability claims from § 78-15-3 to the current § 78B-6-706, but did not substantively change the statute.

Tech, Inc., No. 2:02CV1267 DAK, 2005 WL 2237635, at *4 (D. Utah Sept. 14, 2005) (unreported), aff'd, 216 F. App'x 790 (10th Cir. 2007) (unpublished).  To establish "harm" sufficient to trigger § 78B-6-706's limitations period, "the defendant must show proof that the plaintiff suffered actual damages."  Hansen v. Novartis Pharms. Corp., No. 2:08-cv-985, 2011 WL 6100848, at *4 (D. Utah Dec. 7, 2011) (unreported).

We conclude that Adams knew that she had been harmed no later than November 2007.  By that time, her doctor had discovered that the implanted mesh had migrated and was cutting her, causing severe pain and vaginal bleeding, and would require Adams to undergo a second surgery to excise the portion of the mesh protruding into her vagina.

**B.  By no later than November 2007, Adams had also discovered that it was the sling that had caused her harm**

Adams also knew, no later than November 2007, that there was a "possible causal relation" between the mesh sling and her harm because she knew by that time that the mesh sling had migrated and was cutting into her vagina, requiring a second surgery to remove the portion of the sling protruding into her vagina.  Pratt v. Cavagna N. Am., Inc., No 2:13-CV-107, 2013 WL 6146075, at *3 (D. Utah Nov. 21, 2013) (unreported) (stating that § 78B-6-706's limitations period begins to run when, among other things, "the plaintiff discovers, or should have discovered . . . that the product had a possible causal relation to her injury"); see also Hansen, 2011 WL 6100848, at *3 (D. Utah) (same).

6

Adams contends that the statute of limitations did not begin to run until she knew, or in the exercise of due diligence should have known, that her harm was caused by a <u>defect</u> in the product, the mesh sling. But Adams does not cite, and we could not find, any Utah Supreme Court decision holding that § 78B-6-706's two-year limitations period does not run until the plaintiff knows, or should have known, that her harm is caused, not just by the product, but by a <u>defect</u> in that product. <u>See generally</u> <u>In re Boston Scientific Corp.</u>, No. 2:12-cv-03700, MDL No. 2326, 2015 WL 1466746, at *4 (S.D. W.Va. Mar. 30, 2015) (unreported) (noting that Utah Supreme Court has not yet addressed this question), <u>aff'd</u>, 647 F. App'x 184 (4th Cir. 2016) (unpublished) (per curiam).[5]

Even assuming that the Utah Supreme Court would conclude that the two-year limitations period did not begin to run until Adams knew, or with due diligence should have known, that her harm was caused by a defect in the mesh sling, we conclude that Adams also knew, or should have known, that by no later than

---

[5] Although the Utah Supreme Court has not addressed this question, several federal district courts have; their decisions are divided. <u>Compare</u>, e.g., <u>Bridgewaters v. Toro Co.</u>, 819 F. Supp. 1002, 1003-04, 1007-10 (D. Utah 1993) (holding two-year limitations period in predecessor statute, Utah Code § 78-15-3, began to run, not from when the plaintiff knew she was injured by an object thrown by a lawn mower, but instead when the plaintiff discovered that a defect in the lawn mower caused the injury), <u>with</u>, e.g., <u>In re Boston Scientific Corp.</u>, 2015 WL 1466746, *4 (S.D. W.Va.) (holding Utah Code § 78B-6-706's two-year limitations period begins to run when the plaintiff discovers a "possible causal relation" between the product and her injuries, relying on other decisions from the District of Utah). We need not decide the question here because, as explained below, even assuming that the Utah Supreme Court would conclude that § 78B-6-706's two-year limitations did not begin to run until the plaintiff was on notice that her injuries might be the result of a <u>defect</u> in the product, Adams's claims at issue here are still untimely.

7

November 2007. Adams alleged that the sling was defective because, among other reasons, it was not inert, but instead it would migrate from the site of implantation and could protrude into a patient's vagina. Adams knew, no later than November 2007, that the mesh sling implanted in her had done just that. Cf. Strickland v. Gen. Motors Corp., 852 F. Supp. 956, 959-60 (D. Utah 1994) (applying predecessor statute § 78-15-3; holding plaintiff alleging seat belt was defective should have known that alleged defect caused her harm at the time she had an accident and the seat belt failed to restrain her), abrogated on other grounds as recognized in Misener v. Gen. Motors, 924 F. Supp. 130, 131-32 & 132 n.1 (D. Utah 1996).

Our conclusion is not changed by Adams's contention that, in November 2007, her doctor recommended removing only the portion of the sling that was protruding into her vagina. Even so, Adams knew by this time that she had been harmed by the sling. And she would have had a cause of action under Utah's product liability act at that time, even if the second surgery had alleviated her problems caused by the migrating mesh sling. See Cannon v. Minn. Mining & Mfg. Co., No. 2:08-CV-532 CW, 2009 WL 350561, at *6 & n.2 (D. Utah Feb. 11, 2009) (unreported).[6]

---

[6] The second surgery, of course, did not alleviate Adams's problems. She continued to suffer the same symptoms—vaginal pain and bleeding, as well as incontinence and infections—beginning just after the second surgery and for the next five and one-half years before she initiated this litigation. But those ongoing problems do not change our conclusion that Adams knew by no later than November 2007 that she had already been harmed by the sling. See Cannon, 2009 WL 350561, at *6 & n.2 (noting both that § 78B-6-706 began to run when plaintiff suffered "some harm" and that the limitations period did not "re-start" when plaintiff later suffered new, more severe injuries, citing Utah cases applying statute of limitations for medical malpractice cases); McKinnon v. Tambrands, Inc., 815 F. Supp. 415, 418 n.5 (D.

Adams further contends that she could not be on notice that her injuries might be caused by a defect in the mesh sling until her doctor told her, in 2013, that the entire sling had to be removed. But under Utah law, "the knowledge required of a plaintiff is inquiry notice: a plaintiff need not have a 'confirmed diagnosis' about the causal relation to trigger the running of the statute of limitations," Hansen, 2011 WL 6100848, at *3 (citing McKinnon, 815 F. Supp. at 420); "a definitive confirmation of the cause of a plaintiff's injury is not required," id. at *5. "All that is required to trigger the statute of limitations is sufficient information to put plaintiff on notice to make further inquiry if she harbors doubts or questions." Pratt, 2013 WL 6146075, at *3 (internal quotation marks omitted); see also Griffiths-Rast, 216 F. App'x at 796 (applying predecessor Utah Code § 78-15-3). And Adams had that information by at least November 2007. Her claims, not asserted until June 2013, were thus untimely.

## IV. CONCLUSION

We, therefore, AFFIRM the district court's decision to dismiss Adams's product liability claim against American Medical System as time-barred.

Entered for the Court


David M. Ebel
Circuit Judge

---

Utah 1993) (applying predecessor statute § 78-15-3; indicating that a plaintiff need not know "the full extent" of her harm before the limitations period begins to run).

9