**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 2, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FLONA M. HEIDEMAN, MARIEA M.
BERRYMAN; CRYSTAL DIERINGER;
HEATHER R. LILJENQUIST; and
JENNIFER GOFF,

Plaintiffs-Appellants,

ASHLEIGH MANN; LEAH RAE
MALCOLM; and AMERICAN BUSH,

Plaintiffs-Intervenors-Appellants,

v.

SOUTH SALT LAKE CITY, a Utah
Municipal Corporation,

Defendant-Appellee.

No. 04-4199
(D.C. No. 2:01-CV-918-BSJ)
(Utah)

---

### ORDER AND JUDGMENT*

---

Before **MURPHY**, **O'BRIEN**, and **SEYMOUR,** Circuit Judges.

---

Plaintiffs, former nude dancers and an adult entertainment establishment

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

that employs some of them, American Bush, Inc., filed this § 1983 action challenging on First Amendment grounds the enactment by South Salt Lake City ("the City") of an ordinance banning nudity in adult businesses. The district court granted the City's motion for summary judgment. Plaintiffs appeal, and we affirm.

The factual background of this action was set forth in a detailed and comprehensive opinion by this court addressing Plaintiffs' appeal of the district court's denial of their motion for preliminary injunction. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1184-87 (10th Cir. 2003) (*Heideman I*). Only facts relevant to the present appeal are included here.

The City permitted nude entertainment at certain licensed establishments until May 2, 2001, when it enacted an ordinance which, among other things, prohibits all nude conduct in adult business establishments, either by employees or patrons. S. SALT LAKE CITY, UTAH, ch. 5.56 (2001) (the "Ordinance"). This ban on nude conduct applies to all adult oriented businesses, not only businesses like Plaintiff American Bush, Inc., which provide live entertainment. The Ordinance does not prohibit erotic dancing, but instead requires employees engaged in erotic dancing to wear "G-strings" and "pasties."

In assessing the necessity of the nudity ban and other restrictions set forth in the Ordinance, the City council reviewed numerous court opinions and fifty-six

reports and studies from other municipalities regarding the negative secondary effects associated with adult oriented businesses. Aplt. App., vol. I at 76-77, 175-81. Upon review of these materials, the City Council made the following factual findings, which are set forth in the preamble and "purpose and findings" section of the Ordinance:

(1) Sexually oriented businesses lend themselves to ancillary unlawful and unhealthy activities that are presently uncontrolled by the operators of the establishments . . . . (2) Certain employees of sexually oriented businesses defined in this ordinance as adult theaters and cabarets engage in higher incidents of certain types of illicit sexual behavior than employees of other establishments. (3) Sexual acts, including masturbation, and oral and anal sex, occur at sexually oriented businesses . . . . (5) Persons frequent certain . . . sexually oriented businesses for the purpose of engaging in sex within the premises of such sexually oriented businesses. (6) Numerous communicable diseases may be spread by activities occurring in sexually oriented businesses . . . . (7) According to research from the Kaiser Family Foundation, an estimated 650,000 to 900,000 Americans are infected with HIV. The number of new HIV infections occurring each year is now about 41,000. Men and [w]omen of all races are most likely to be infected by sexual contact. (8) A total of 1,672 AIDS cases had been reported in Utah as of January 1, 1999 . . . . (9) The Center for Disease Control and Prevention estimate that as many as 1 in 3 people with HIV do not know they are infected. (10) The number of cases of early . . . syphilis in the United States reported annually has risen with 33,613 cases reported in 1982 and 45,200 through November of 1990. (11) The number of cases of gonorrhea in the United States reported annually remains at a high level, with over one-half million cases being reported in 1990. (12) The Surgeon General of the United States in his report of October 22, 1986, has advised the American public that AIDS and HIV infection may be transmitted through sexual contact, . . . and from an infected mother to the newborn. (13) According to the best scientific evidence, AIDS and HIV infection, as well as syphilis and gonorrhea, are principally transmitted by

sexual acts. (14) Sanitary conditions in some sexually oriented businesses are unhealthy, in part, because the activities conducted there are unhealthy, and, in part, because of the unregulated nature of the activities and the failure of the owners and the operators of the facilities to self-regulate those activities and maintain those facilities. (15) Numerous studies and reports have determined that semen is found in the areas of sexually oriented businesses where persons view 'adult' oriented films. (16) The [preceding] findings . . . raise substantial governmental concerns.

*Id.* at 77-79.

Based on these factual findings, the Ordinance's preamble states that it is necessary "to protect and preserve the health, safety, morals and welfare of the patrons of [adult entertainment establishments] as well as the citizens of the City" *id.* at 75, because nude conduct increases the prevalence of, among other things, unsanitary conditions, unlawful sexual activities and sexually transmitted diseases. The Ordinance further states that "[t]he general welfare, health, morals and safety of the citizens of the City will be promoted by the enactment of this Ordinance," *id.* at 80, which includes a total ban on nudity in adult entertainment establishments.

After the Ordinance was enacted, Plaintiffs filed the present action claiming that the nudity ban is an illegal infringement of their First Amendment rights. They sought a preliminary injunction, which the district court denied. We upheld the district court's ruling. *Heideman I*, 348 F.3d at 1200. After the parties conducted discovery, the City filed a motion for summary judgment,

-4-

asserting among other things that Plaintiffs failed to submit sufficient evidence to cast doubt on the evidence relied on by the City in enacting its Ordinance, or on the reasonableness of the City's reliance on that evidence.  The district court granted the City's motion.

We review the district court's grant of summary judgment *de novo*, applying the same legal standard it used.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.  *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

In so doing, we affirm the district court's summary judgment, but on different grounds.  *See United States v. Knox*, 124 F.3d 1360, 1362 (10th Cir. 1997) (citing *Keyes v. Sch. Dist. No. 1*, 521 F.2d 465, 472-73 (10th Cir. 1975)) (appellate court will affirm rulings of lower court on any ground that finds support in record).  We agree with the district court that the City's evidence meets the "reasonably believed to be relevant" standard set forth by the Supreme Court in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51-52 (1986).

However, we disagree with the court's characterization of Plaintiffs' challenge, namely, that Plaintiffs' action simply asks the court to re-weigh the City's evidence *de novo* and assess the wisdom of the City's judgment. Rather, we view Plaintiffs' claims within the evidentiary burden-shifting framework set out by the Supreme Court in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438-39 (2002) (plurality opinion), and *City of Erie v. Pap's A.M.*, 529 U.S. 277, 297-98 (2000) (plurality opinion). *See also Heideman I*, 348 F.3d at 1198 (stating that City's "initial burden to present empirical support for its conclusions [regarding necessity of ordinance] is minimal, but that plaintiffs must have an opportunity to present their own evidence, to which the city is then entitled to respond"). Under this approach, we examine whether Plaintiffs' evidence was sufficient to cast doubt on the City's evidence and its reliance thereon to support passage of the Ordinance. If so, Plaintiffs shift the burden of proof back to the City and foreclose summary judgment. Plaintiffs failed to clear this evidentiary hurdle.

On appeal, Plaintiffs claim they did present sufficient evidence to call into question the reasonableness of the City's Ordinance and the reliability of the evidence supporting its enactment. Specifically, Plaintiffs point to testimony from their expert witness attacking the validity of studies and reports from other cities relied upon by the City, as well as affidavits from neighboring property owners stating that their properties and businesses have not been adversely

affected by their proximity to Plaintiff American Bush, Inc.'s establishment. Aplt. App., vol. I at 172-74, 186-87, 189-90. Plaintiffs also point to affidavits and testimony from the owner of American Bush, Inc., stating that his establishment, for the most part, has complied fully with existing regulations, and that banning nude dancing would force it to start serving alcohol in order to compete with other adult entertainment businesses providing semi-nude dancing, thereby increasing, not limiting, the potential for negative secondary effects. *Id.* at 138-39, 192-98. We conclude, however, that this evidence fails to raise a genuine issue of material fact as to the reasonableness of the City's clear interest in the diminishment of such secondary negative effects as unsanitary conditions, unlawful sexual activity, and the transmission of sexually transmitted diseases.

Simply put, the record does not contain any evidence to counter the City's concern over unsanitary conditions or the possibility of public health concerns associated with unregulated nude conduct in adult business establishments. Although Plaintiffs submitted evidence in rebuttal of other negative secondary effects cited by the City in its Ordinance, such as diminished property values and crime, they presented no evidence whatsoever that nude conduct does not result in unsanitary conditions, unlawful sexual conduct, or the transmission of sexually

transmitted diseases.[1]  To the contrary, at least one piece of evidence submitted by

Plaintiffs could be read to support the reasonableness of the City's concerns.  In

an affidavit Hallard Cannon, president and chief executive officer of American

Bush, Inc., stated that in December 1999, two dancer-employees at his

establishment "were cited for violations of the ordinance prohibiting 'touching

while performing.'" *Id.* at 196.  Regardless of the final outcome of those citations,

Mr. Cannon's statement at the very least suggests that nude employees were either

simulating masturbation or engaging in physical contact with patrons.  Both of

these activities reasonably could relate to the City's concern over unsanitary

conditions and unlawful sexual activity and their relationship to sexually

---

[1]In their reply brief, Plaintiffs claim that at least some of the evidence the City relied upon in finding that unsanitary conditions are connected with nude entertainment involves establishments different from those employing Plaintiffs and from Plaintiff American Bush, Inc.  Reply. Br. at 4-5.  Specifically, Plaintiffs claim that evidence of unsanitary conditions and unlawful sexual activity associated with "peep shows" and video booths is not probative as to the existence of unsanitary conditions and unlawful sexual activity at nude dancing establishments.  Plaintiffs, however, misunderstand the nature of their burden of proof.  The City is permitted to rely on evidence of conditions at adult oriented businesses in general.  *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 296-97 (2000) ("Because the nude dancing [at plaintiff's establishment] is of the same character as the adult entertainment at issue in *Renton [v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), namely, adult motion pictures], *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976) [same], and *California v. LaRue*, 409 U.S. 109 (1972) [erotic dancing], it was reasonable for [the city] to conclude that such nude dancing was likely to produce the same secondary effects.").  Plaintiffs' only means of rebutting this evidence, therefore, is to submit evidence showing how and why their particular activities and/or establishments do not present similar concerns.  Plaintiffs simply did not do this.

transmitted diseases. Regardless of the ultimate probative value of this evidence, the reality remains that Plaintiffs did not submit any evidence showing that nude conduct does not present the kinds of negative secondary effects the City seeks to curtail or eliminate by requiring employees and patrons to wear some measure of clothing. Accordingly, Plaintiffs failed to shift the burden of proof from themselves back to the City.

Their failure to present sufficient evidence countering that proffered by the City compels us to further conclude that Plaintiffs did not raise any genuine issues of material fact to preclude the district court's grant of summary judgment against it. In *Heideman I*, we stated that the City's Ordinance, as a "time, place and manner" regulation designed to ameliorate negative secondary effects rather than to suppress speech, is to be reviewed under intermediate scrutiny pursuant to the four part test laid out by the Supreme Court in *United States v. O'Brien*, 391 U.S. 367, 377 (1968). Under that test, the City's Ordinance will survive intermediate scrutiny if it "(1) [is] within the constitutional power of the government to adopt; (2) further[s] an important or substantial government interest; which (3) is unrelated to the suppression of expression; and (4) [is] no greater restriction of First Amendment freedom than is essential to furtherance of the government's purpose." *Heideman I*, 348 F.3d at 1197 (citations omitted). Plaintiffs' evidence is insufficient to raise genuine issues of material fact under the *O'Brien* test.

As we stated in *Heideman I*, "[t]here is no doubt that the Ordinance is within the lawful powers" of the City to enact. *Id. See also Pap's A.M.*, 529 U.S. at 296 (a city's "efforts to protect public health and safety are clearly within the city's [zoning] powers"). Therefore, the first prong of the *O'Brien* test is easily disposed of. As to the third prong, the Supreme "Court has consistently held that the control of negative secondary effects, such as those invoked by [the City], is unrelated to the suppression of the expression." *Heideman I*, 348 F.3d at 1200. Hence, Plaintiffs cannot gain ground on the third prong.[2] Finally, as to the fourth prong, the district court observed, and we agree, that the requirement that dancers

_____

[2]Plaintiffs assert, to the contrary, that the purpose of the Ordinance is the suppression of disfavored speech and that the amelioration of negative secondary effects is merely pretext for the City's impermissible aim. In support of their argument, Plaintiffs point to the deposition testimony of one council member and the City's Assistant Police Chief. Aplt. App., vol. III at 682-710. The City claims that transcripts of these depositions were not submitted to the district court. Indeed, the confusing nature of Plaintiffs' appendix makes it difficult to discern what evidence was, in fact, before the district court. We need not try to ascertain whether Plaintiffs' evidence, in fact, was submitted to the district court because even if it was, it is insufficient to raise a genuine issue of material fact as to whether the City's stated concern over negative secondary effects is pretext for the aim of suppressing protected speech. Regarding the council member's testimony, the Supreme Court has stated on several occasions that evidence of the impermissible motives of one legislator is insufficient to overcome the presumption that a legislative body's primary aim in enacting a given piece of legislation was not the suppression of disfavored speech. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986). As to the testimony of the Assistant Police Chief, he was not involved in the decision to enact the Ordinance, and therefore any motive he may have had, impermissible or otherwise, is irrelevant to whether the Ordinance was enacted with the primary goal of suppressing speech.

-10-

wear "G-strings" and "pasties" has a *de minimis* effect on their ability to communicate their message of eroticism. Aplt. App., vol. III at 863 (citing *Heideman I*, 348 F.3d at 1200). Therefore, the City's nudity ban and its accompanying requirement that dancers wear "G-strings" and "pasties" presents a restriction no greater than is necessary to further the City's stated interest in decreasing the likelihood of unsanitary conditions, unlawful sexual activity and sexually transmitted diseases.

Turning at last to the second prong of the *O'Brien* test, namely, whether the City's nudity ban is necessary to the furtherance of eliminating negative secondary effects, we reiterate that the City bears the initial burden of proving the reasonableness of its concerns over negative secondary effects as well as the reasonableness of its belief that the challenged regulation will successfully address those secondary effects. *See Turner Broad SYS., Inc. v. FCC*, 512 U.S. 622, 664 (1994). As we noted in *Heideman I* and as the Supreme Court has held time and again, however, this burden is not an onerous one. *Heideman I*, 348 F.3d at 1197-99. The City may rely on "seemingly pre-packaged studies, as well as the findings of courts in other cases." *Id.* at 1197; *see also Pap's A.M.*, 529 U.S. at 296 ("in terms of demonstrating that . . . secondary effects pose a threat, [a] city need not 'conduct new studies or produce evidence independent of that already generated by other cities' to demonstrate the problem of secondary

-11-

effects, 'so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses'") (quoting *Renton*, 475 U.S. at 51-52)). We agree with the district court that the City met its initial burden of presenting evidence "reasonably believed to be relevant." It was the Plaintiffs' burden then to submit evidence casting doubt on the reasonableness or relevance of the City's evidence and the inferences it drew from that evidence. As we have already stated, Plaintiffs failed to do this.

In sum, we conclude that Plaintiffs have not shown a genuine issue of material fact as to any of the four *O'Brien* prongs, and therefore the district court did not err in granting the City's motion for summary judgment. Accordingly, we **AFFIRM**.

ENTERED FOR THE COURT


Stephanie K. Seymour
Circuit Judge