**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 18, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CONSTITUTION PARTY OF KANSAS;
CURT ENGELBRECHT; and MARK
PICKENS,

     Plaintiffs-Appellants,

v.

KRIS W. KOBACH, in his official
capacity as Secretary of State of Kansas,

     Defendant-Appellee.

No. 11-3152

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 5:10-CV-04043-SAC-KGS)**

---

Daniel J. Treuden of the Bernhoft Law Firm, S.C., Milwaukee, Wisconsin, for Plaintiffs-
Appellants.

Kris Kobach, Secretary of State of Kansas (Ryan A. Kriegshauser, Deputy Secretary of
State, with him on the brief), Topeka, Kansas, for Defendant-Appellee.

---

Before **BRISCOE**, Chief Judge, **EBEL**, and **LUCERO**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

The Constitution Party of Kansas, Curt Engelbrecht, and Mark Pickens sued the Secretary of State of Kansas, now Kris Kobach (hereinafter, the "Secretary"), in his official capacity, alleging that their First and Fourteenth Amendment rights are violated by the Secretary's refusal, consistent with Kansas law, to keep track of Kansas voters' affiliation with the Constitution Party because the Constitution Party is not a recognized political party under Kansas law. In the district court, the parties stipulated to a Joint Statement of Facts and filed cross-motions for summary judgment. The court ruled for the Secretary, determining that Kansas's system of tracking party affiliation did not unconstitutionally burden the plaintiffs' rights.

On appeal, the plaintiffs (hereinafter, the "Constitution Party") argue that the district court misapplied controlling Tenth Circuit precedent in evaluating their claim, and that under the proper analytical criteria, reversal is warranted. The Constitution Party does *not* contend that summary judgment was improper due to a lack of evidence in the record to support the Secretary's legal argument. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM, based on our rejection of the argument on which the Constitution Party has chosen to hinge its appeal.

## BACKGROUND

The Secretary of State of Kansas "may adopt rules and regulations prescribing the method of listing members of all registered political organizations in voter registration and affiliation." Kan. Stat. Ann. § 25-3307(b) (2011). Kansas allows its residents to declare, when they register to vote, "a party affiliation with any recognized political party

2

or a voter affiliation with any registered political organization." *Id.* § 25-3306. Voters thus may affiliate themselves only with a "recognized political party" or "registered political organization,"[1] *see id.*; otherwise voters must select "Not affiliated with a party" on the voter registration form, App'x at 7 ¶ 15. To become a recognized political party, the would-be party must file "petitions signed by qualified electors equal in number to at least 2% of the total vote cast for all candidates for the office of governor in the state in the last preceding general election." Kan. Stat. Ann. § 25-302a. Meanwhile, any registered political organization that "ha[s] obtained official recognition as a political party" in the past may "seek[] the right of designation on voter affiliation lists" by "fil[ing] a statement of organization and a certified list of officers with the [Secretary]." *Id.* § 25-3307(a). Under that avenue to voter affiliation tracking, "[c]urrent status as a recognized political party is not required." *Id.*

Currently there are five recognized political parties in Kansas: Democratic, Republican, Libertarian, Reform, and Americans Elect.[2] If a Kansas voter does not declare affiliation with a recognized political party or a registered political organization, the voter is listed as unaffiliated by default. The Secretary tracks party affiliation information on a computer database, and that information is made available to the public.

---

[1] For the purposes of this opinion, unless noted otherwise, the terms "recognized political party" and "registered political organization" refer to the respective definitions of those terms under Kansas law.

[2] The parties note that the Americans Elect party qualified for the ballot in July 2011, after the district court had entered judgment.

3

Party affiliation lists can be used for political campaign and election purposes.

The Constitution Party is an affiliation of individuals who promote political views and support candidates for state and national elected offices in Kansas, but it is not a recognized political party or a registered political organization under Kansas law. Thus, the Constitution Party has not satisfied the state statutory requirements for having the Secretary record and track voters' affiliation with it. That notwithstanding, the Constitution Party wishes to use party affiliation lists to contact and associate with members and supporters for political campaign or election purposes.

Purported supporters of the Constitution Party have run, in the past in Kansas, on the ticket of recognized party parties—i.e., not of the Constitution Party—because the Constitution Party is not a recognized political party in the state. For example, Susan Ducey, a Constitution Party supporter and former candidate for Congress in Kansas's Fourth Congressional District, ran as the candidate of the Kansas Reform Party because she could not do so under a Constitution Party label.

The Constitution Party filed suit against the Secretary on April 28, 2010, seeking declaratory and injunctive relief from the Secretary's alleged violations of the First and Fourteenth Amendment. Specifically, Count I of the complaint—the only count at issue on appeal[3]—alleged that Kansas's failure to record and to track voter affiliation with the

---

[3] Count II alleged that Kansas law prohibiting non-state-residents from circulating ballot petitions violated the First and Fourteenth Amendment as well as the so-called Dormant Commerce Clause. The parties stipulated to an order and judgment—the nature

Continued . . .

4

Constitution Party violates the First Amendment's guarantees of political speech and political association, as well as the Fourteenth Amendment's guarantee of equal protection under the law.[4] In September 2010, the parties submitted a Joint Statement of Facts for purposes of ruling on Count I. Both parties then moved for summary judgment. In April 2011, after full briefing on the cross-motions, the district court granted summary judgment in favor of the Secretary.

The district court analyzed the Constitution Party's claim under the balancing test set forth in *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) (requiring courts evaluating "[c]onstitutional challenges to specific provisions of a State's election laws" to weigh the injury to plaintiffs' constitutional rights against the state's interests in burdening those rights). Under *Anderson*, the district court first determined that the Constitution Party had articulated "legitimate and important interests which are burdened by the State," namely, interests in a diverse marketplace of political ideas, communicating with possible party members, and effectively organizing political campaigns. App'x at 18-19. The court then decided that the Secretary had interests in regulating voter registration; in avoiding voter confusion and other frustrations to the

_____

Cont.

of which is unclear from the appellate record—on that count, and the district court entered judgment accordingly on August 13, 2010. That issue is thus not before us.

[4] The Constitution Party does not argue that Kansas's refusal to identify it on voting ballots is unconstitutional; nor does it argue that Kansas's 2% signature threshold for qualification as a recognized political party is unconstitutional.

5

democratic process; in minimizing the administrative burden on the state; and, in related fashion, in controlling frivolous party registration of fractional political interests. The court reflected that case law provides no "specific criteria for determining whether [a political] organization has a modicum of support" sufficient to warrant voter affiliation tracking privileges. *Id.* at 23. The court discussed several cases that had addressed the question, and concluded that

> Kansas, like [the states in the case law], properly relies on the state statutes to define when a political party or organization shows a modicum of support. The Kansas requirements for becoming a recognized political party or registered political organization closely resemble [those of two other states that were upheld in other cases]. . . .

> The State of Kansas has a substantial and heavy burden to control fractionalism. The Court finds that the statutory requirements for recognition as a [recognized] political party or [registered political] organization in Kansas are unquestionably constitutional in requiring the stated modicum of support, and precluding fractional interests.

> Unrecognized political [']parties['] representing minority views are vital to the continuation of a representative government, but this must be balanced with the State's important interests in controlling fractionalism, avoiding voter confusion, and reducing the burden of additional administrative costs. Kansas, by its statutes, has established a reasonable threshold for an organization to become a recognized political party or [registered political] organization. When the court balances the interests of the parties here, it finds that the state has not unnecessarily infringed upon the speech, association or equal protection rights of the plaintiffs . . . .

*Id.* at 26-27.

This appeal followed. As explained in greater detail below, the Constitution Party has limited its argument on appeal to the narrow question of whether it is entitled to relief as a matter of law under *Baer v. Meyer*, 728 F.2d 471 (10th Cir. 1984)—a decision the

Constitution Party argues "is the Tenth Circuit's articulation of how the balancing test in *Anderson v. Celebrezze* is to be considered in voter affiliation cases."  Aplt. R. Br. at 5.

## DISCUSSION

### A. Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court."  *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010) (quotation marks, citation omitted).  "Cross motions for summary judgment are treated separately; the denial of one does not require the grant of another." *Id.* (alteration, quotation marks, citation omitted).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether the moving party is entitled to judgment as a matter of law based on the record, "we view the evidence and draw reasonable inferences therefrom in the light most favorable to" the nonmovant.  *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

If a party chooses not to assert, or expressly disavows, a certain argument on appeal, we generally will not consider that argument in our review.  *See Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999) ("This court . . . will not craft a party's arguments for him"); *Vaz Dos Reis v. Holder*, 606 F.3d 1, 4 (1st Cir. 2010) ("When a party disavows a particular theory of the case, it is not an appellate court's proper role to make the disavowed argument for him."); *cf. Bronson v. Swensen*, 500 F.3d

7

1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

## B. Analysis

### I.

The analytical framework that governs constitutional challenges to laws regulating party affiliation on voter registration forms is the balancing test set forth in *Anderson v. Celebrezze*, 460 U.S. 780. *See Rainbow Coal. of Okla. v. Okla. State Election Bd.*, 844 F.2d 740, 747 (10th Cir. 1988); *Baer*, 728 F.2d at 475. In *Anderson*, the Supreme Court determined that "[c]onstitutional challenges to specific provisions of a State's election laws . . . cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions." 460 U.S. at 789 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). Rather, courts must follow a case-by-case balancing approach:

> [The court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the [c]ourt must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Id.* The Supreme Court emphasized that "[t]he results of this evaluation will not be automatic" and that "there is 'no substitute for the hard judgments that must be made.'" *Id.* at 789-90 (quoting *Storer*, 415 U.S. at 730).

To frame the issue before us in this appeal, it is prudent first to summarize the argument the Constitution Party made in its briefs. The Constitution Party never argued that summary judgment for the Secretary was improper as an evidentiary matter. Rather, the Constitution Party argued (A) that it has shown a "sufficient modicum of [political] support" under the criteria set forth in *Baer* to merit voter affiliation tracking, Aplt. Br. at 6; and (B) that the Secretary's asserted interests—e.g., "controlling fractionalism, avoiding voter confusion and reducing the administrative burden of regulating elections"—do not justify the Secretary's refusal to track voter affiliation with respect to the Constitution Party, *id.* at 7.

On the first of these points, regarding its political support, the Constitution Party argued in the briefs that "*Baer* is the controlling case law" that sets the "threshold" of voter support that is necessary "to be tracked in voter registration lists"—a threshold "lower . . . than [the threshold] necessary to appear on an actual election ballot." *Id.* The Constitution Party contended that "the district court erred by replacing the factors in *Baer* with the statutory criteria Kansas has for defining [recognized] political parties." *Id.* at 19. It asserted that "it is time for this Court to hold that the *Baer* factors control whether . . . membership or affiliation [vis-à-vis any political entity] in voter registration databases should be tracked." *Id.* at 21.

On the latter point, regarding the Secretary's interests, the Constitution Party argued that "the burden on the state to track affiliation with unrecognized [']parties['] is miniscule or even nil." *Id.* at 14 (capitalizations from heading omitted). However, the

9

Constitution Party never made the argument that facts in the record do not support the

Secretary's claimed burdens.  Rather, it simply pointed to case law and made conjectures

about the Secretary's concerns.

At oral argument, we inquired about the Constitution Party's presentation of its

appeal, probing the nature and scope of its argument for reversal:

- *The Court*:  [Having just observed that summary judgment to the Secretary might have been improper on account of the lack of evidence on the record of the Secretary's burdens under *Anderson*—] "But, the only issue you [the Constitution Party] have presented to us on appeal is not an evidentiary issue, at all."

- *Counsel for the Constitution Party*: "Mm-hmm."

- *The Court*: "You only say, 'Apply *Baer*.'  And we might say, 'That's wrong.  We're not going to apply *Baer*.  And because that's the only issue you have presented, you lose.'  Now, is that the way this case comes out? . . . ."

- *Counsel for the Constitution Party*: "I don't think so because I think when you still apply the balancing test without any evidence on [the Secretary's] side, it's a very low burden."

- *The Court*:  "You never made an evidentiary—did you ever, on appeal, argue insufficiency of [the Secretary's] evidence to support summary judgment?"

- *Counsel for the Constitution Party*:  "Umm, the only thing I can think of is in my reply brief when I pointed out, umm—I believe I pointed out that, umm, there was no evidence in the record—"

- *The Court*:  "Well, I don't remember that, but if it came in a reply brief in a throwaway sentence, that's not going to be enough. . . . And so it seems to [us] that maybe we disregard it and say maybe there was no evidence to support [summary judgment] here, but that's not the issue before us. The issue before us is whether we should rule, as a matter of law, that *Baer* [compels reversal].  And if we say no, . . . we say, 'I'm

sorry, you might have made a winning argument, but you didn't. You lose.' Now . . . where is that argument weak?"

- *Counsel for the Constitution Party:* "Well, I mean, I guess I concentrated on *Baer* because that's really the goal of our clients."

- *The Court*: "*Okay, so we just take the case you present to us on appeal, and that's the only issue we're going to address?*"

- *Counsel for the Constitution Party*: "*I think so, but I also think we win on* [Baer].*"*

- *The Court*: "Okay."

Oral arg. at 10:07-11:54 (emphases added) (with counsel proceeding to analyze

*Baer*'s applicability). And later, further clarifying the matter:

- *The Court*: "We don't know [about the weight of interests under *Anderson* in this case] because no one has put on evidence of burdens . . . *But that doesn't matter because you [Constitution Party] are not raising an evidentiary issue on appeal.*"

- *Counsel for the Constitution Party*: "*No.*"

- *The Court*: "Okay."

Oral arg. at 35:16-35:25 (emphases added).

Accordingly, in light of the Constitution Party's disavowal of evidentiary

arguments, and more importantly the failure to assert that issue before the district court

and in its opening brief, the question of whether reversal is warranted on account of

insufficient evidence in the record supporting the Secretary's claimed burdens is not

before us. *See Perry*, 199 F.3d at 1141 n.13; *Vaz Dos Reis*, 606 F.3d at 4. Rather, the

Constitution Party has directed us to address solely whether *Baer*—which the

11

Constitution Party argues "is the Tenth Circuit's articulation of how the balancing test in *Anderson v. Celebrezze* is to be considered in voter affiliation cases," Aplt. R. Br. at 5—compels reversal in this case.

## II.

At this point, *Baer* must be explained. *Baer* dealt with a challenge brought by two small political entities in Colorado that did not qualify under Colorado law as (recognized) "political part[ies]." 728 F.2d at 472 (citing Colo. Rev. Stat. § 1–1–104(18) (1980)). The plaintiffs in *Baer* "allege[d] that [Colorado's] system creat[ed] unfair or unnecessary burdens on minority political associations in three respects." *Id.* One of the issues in that case involved a challenge similar to the one in this case: the plaintiffs claimed that Colorado's refusal to allow voters to indicate affiliation with entities not recognized as "political parties," as defined by state statutory law, unconstitutionally denied them information, enjoyed by official parties, about voter support. *Id.*

In *Baer*, as a preliminary matter with respect to that issue, we recognized that *Anderson*'s balancing test provided the analytical framework for that constitutional question. *See id.* at 475. Then, implicitly recognizing that the plaintiffs' constitutional interests under *Anderson* were burdened, we proceeded to analyze the Secretary's arguments that its interests should trump those of the plaintiffs. *See id.* First, we addressed the administrative burden that would be posed if the Secretary were ordered to "permit and include in the [state's] computerized record a citizen's designation of its affiliation with either of the two plaintiff parties," and we concluded that the "record

12

reflect[ed] that [such] burden . . . would be merely nominal." *Id.* Second, we addressed the Secretary's non-evidentiary, slippery-slope argument that, if Colorado were required to record and track voter affiliation vis-à-vis any political entity, "it would be faced with the impossible task of sorting out" frivolous and insubstantial political parties. *Id.* We acknowledged that states have a substantial interest in preventing frivolous party registration, but we rejected the Secretary's argument by relying on the state-law precedent of *McBroom v. Brown*, 53 Colo. 412 (1912). *See Baer*, 728 F.2d at 475. We cited *McBroom* as "ha[ving] already provided a water mark which if followed prevents this burdensome result" of tracking party affiliation with any and every purported party, no matter how insubstantial. *Id.*

Pursuant to *McBroom*—in which the Supreme Court of Colorado was "construing a substantially identical predecessor section of the Colorado Code" that was at issue in *Baer*, 728 F.2d at 474—Colorado's Secretary "need only permit such party designation in registering if [1] a political organization [as defined by Colorado's statutes] already exists in the State under its name, [2] has recognized officials, and [3] has previously placed a candidate on the ballot by petition." *Id.* at 475. Because the plaintiffs in *Baer* met *McBroom*'s criteria (which were based on Colorado statutory law), we held that the Secretary could not refuse to permit registration with them. We "carefully" limited our grant of relief to those two plaintiffs, which qualified as "political organizations as recognized in *McBroom*"—the decision that, we said, provided the indicator under Colorado law of when a political entity had "demonstrate[d] some modicum of political

13

organization and support," *id.* at 476, sufficient to avoid the classification as a "tiny fractional interests," affiliation with which the Secretary need not register, *id.* at 475. We concluded our opinion in *Baer* by "affirm[ing] the trial court's decision insofar as it requires the Secretary of State [of Colorado] to conform to the holding of *McBroom* and to permit supporters of [the plaintiffs] to designate that support on their voter registration forms." *Id.* at 476; *see also id.* ("[T]o the extent [the trial court's opinion] could be construed more broadly than our holding in this opinion, we disapprove it.").

Now, we must clarify the constitutional import of *Baer*—which has been interpreted in relatively disparate fashion[5]—because the Constitution Party has rested its appeal on that decision. *Baer*'s holding regarding tracking voter affiliation was a federal constitutional decision in a broad sense, but one in which, crucially, we resolved a particular sub-argument on state-law grounds. That is, broadly, *Baer* decided as a matter of constitutional law that the plaintiffs' constitutional rights had been burdened, and

---

[5] *Compare Iowa Socialist Party v. Nelson*, 909 F.2d 1175, 1179 n.7 (8th Cir. 1990) ("While [the *McBroom* factors cited in *Baer*] may have been relevant and sufficient in *Baer* to require the state to permit party designation, the same factors might not be relevant in a different context. . . . We too [having just cited this Court's subsequent decision in *Rainbow Coalition*] reject these factors as the exclusive or even necessarily the most reliable, indicators of the state registration procedure's constitutionality."), *with Atherton v. Ward*, 22 F. Supp. 2d 1265, 1267-68 (W.D. Okla. 1998) (noting that it was "bound by . . . *Baer*" and concluding that there was "no difference in a constitutional sense between Oklahoma law and the Colorado law at issue in *Baer*"). *See also Green Party of N.Y. v. N.Y. State Bd. of Elections*, 389 F.3d 411, 422 (2d Cir. 2004) (recognizing that *Baer* did not state a universal bright-line rule for drawing the line with frivolous party registration, "[b]ut, like *Baer*, [holding] that the ability to meet the requirements for placing a candidate on the statewide ballot is enough of an indication of support to overcome the state's interest in preventing voter confusion").

under *Anderson*, that injury outweighed the merely nominal corresponding burdens on the Secretary of Colorado to track affiliation with the plaintiffs. *See* 728 F.2d at 475. However, with respect to the Secretary's argument that granting relief to the plaintiffs would force the Secretary to track any and every self-proclaimed 'party,' *Baer* rejected that proposition by relying on the state-statute-based criteria taken from *McBroom*. We said in *Baer*—having earlier emphasized the principle of constitutional avoidance, and having relied on *McBroom* as a state-law decision for the purposes of such avoidance, *see id.* at 474—that "the Supreme Court of Colorado in *McBroom* has already provided a water mark which if followed prevents this burdensome result." 728 F.2d at 475. And later, we "carefully" confined our decision to the plaintiffs in that case, cautioning that our opinion was not to be construed too broadly. *Id.* at 476. Thus, *Baer*'s specific holding as to what constituted a sufficient "modicum of political organization and support" did not announce a federal constitutional rule. *Id.* Rather, we simply held, there, that *McBroom* articulated state-law criteria for what elevated a political organization in Colorado above classification as a "tiny fractional interest," affiliation with which the state might have refused to track.[6] *Id.* at 475.

---

[6] Our decision in *Rainbow Coalition of Oklahoma v. Oklahoma State Election Board*, 844 F.2d 740 (10th Cir. 1988), is not contrary to our interpretation of *Baer* today. In *Rainbow Coalition*, which arose in the context of Oklahoma law, we affirmed summary judgment for Oklahoma state defendants, ruling that the state's interest in avoiding administrative burden was sufficient, under *Anderson*, to justify the state's voter affiliation system. 844 F.2d at 747. We distinguished *Baer* on the grounds that the administrative burden presented in *Baer* was "merely nominal," whereas the facts in

Continued . . .

III.

We may now address the Constitution Party's argument that *Baer* compels

_____

Cont.

*Rainbow Coalition* showed that the state's burden "would be substantial." *Id.* We acknowledged that, in *Baer*, we had "limited our holding" to grant relief to "only those parties [that] had 'succeeded in fielding candidates by the petition process so as to demonstrate some modicum of political organization and support.'" *Id.* (quoting *Baer*, 728 F.2d at 476). However, we did not in *Rainbow Coalition* confront the question, resolved in *Baer* by relying on a Colorado-law benchmark, of what criteria might serve in the Oklahoma context to defeat the argument about "the state's interest in controlling party registration of tiny fractional [political] interests." *Rainbow Coalition*, 844 F.2d at 747. Our mere summary in *Rainbow Coalition* of *Baer*'s limited holding did not enshrine, as a federal constitutional rule, *Baer*'s Colorado-specific criteria for what constitutes a modicum of political organization and support such that an entity qualifies as more than a "tiny fractional interest," *Baer*, 728 F.2d at 475.

Meanwhile, we add the observation that summary judgment for the Secretary is not automatically warranted in this case in light of *Rainbow Coalition*. Specifically, it is not the case that since in *Rainbow Coalition* we ruled for a state with a 5% signature threshold for political-party recognition, it follows *a fortiori* that we should rule for the Secretary because Kansas's 2% threshold is less onerous. The constitutional challenge common to *Rainbow Coalition* and the present case is not a challenge to the state's statutory threshold for party recognition. Rather, the challenge is to the state's refusal to track affiliation with entities that are not recognized political parties, independent of the propriety of the statutory criteria for recognition. The signature threshold is not necessarily relevant, then, to the application of *Anderson*'s balancing test in this particular context. *See Rainbow Coalition*, 844 F.2d at 742-44, 747 (analyzing separately the constitutionality of the signature requirement, and the constitutionality of the refusal to track affiliation with plaintiffs, who were not recognized political parties).

Moreover, assuming the signature percentage threshold were relevant, *Anderson* expressly rejected the notion that "any 'litmus-paper test' . . . will separate valid from invalid restrictions," and emphasized that "the results of [the balancing test identified in the opinion] will not be automatic." 460 U.S. at 789-90 (quoting *Storer*, 415 U.S. at 730). Accordingly, it could be, for instance, that a state's interests in one case were stronger than those of a different state in a subsequent case, such that even though the state in the prior case prevailed under *Anderson* with voter affiliation laws that were even more burdensome, the state in the subsequent case would not prevail. But again, we conduct no such evidentiary inquiry today.

16

reversal as a matter of law in this case. We reject that argument for multiple self-sufficient reasons.

For one, the Constitution Party cannot rely on *Baer* to find legal error with the district court's conclusion that the Constitution Party failed to demonstrate a "modicum of support" under Kansas law and therefore was a "fractional interest[]," affiliation with which the Secretary need not track. App'x at 27. As discussed above, *Baer*'s statement of what sufficed as a sufficient level of political support and organization in that case rested on Colorado law, and was never intended to establish *per se* criteria outside *Baer*'s state-specific context. Therefore, *Baer* does not require us, as a matter of law, to find error with the district court's determination that the Constitution Party is a fractional political interest in Kansas, such that the Secretary need not track affiliation with it.

Moreover, even if we found legal error with the district court's reliance on Kansas's statutory standards rather than the *McBroom*-via-*Baer* factors in classifying the Constitution Party as a mere fractional interest, that alone would not compel reversal. Rather, there would remain the district court's conclusions regarding the Secretary's "interests in . . . avoiding voter confusion, and reducing the burden of additional costs," *id.*, which are independent of the Secretary's interest in controlling fractionalism, and which alone may have outweighed the Constitution Party's countervailing interests. But such balancing would require us to examine the evidence in the record of the parties'

17

respective burdens and interests,[7] and the Constitution Party has forsaken evidence-based avenues of reversal.

Finally, even assuming arguendo that "the *Baer* test" were applicable and dispositive in this case as the Constitution Party argues (without merit), the Constitution Party fails to pass that very test. The Constitution Party repeatedly argued that entities that do not qualify as recognized political parties may nevertheless demonstrate sufficient political support and organization as to earn affiliation-tracking privileges by meeting the *Baer* factors. However, notwithstanding the Constitution Party's single bald assertion in its briefs that it "satisfies th[ose] factors," Aplt. Br. at 7, it is apparent that Constitution Party actually does not. The three *McBroom* criteria cited in *Baer* for a modicum of support were: "[1] a political organization already exists in the State under [the would-be-tracked entity's] name, [2] has recognized officials, and [3] has previously placed a candidate on the ballot by petition." *Baer*, 728 F.2d at 475. However, judging from everything presented to us in this case, the Constitution Party has not previously placed a candidate on the ballot under the Constitution Party name, as required under the third

---

[7] *See Baer*, 728 F.2d at 475 ("The record reflects that the burden on the Secretary . . . to permit and include in the computerized record a citizen's designation of its affiliation with either of the two plaintiff parties would be merely nominal."); *see also Rainbow Coalition*, 844 F.2d at 747 (relying on the state's "present[ation] [of] uncontroverted evidence" of the "state's [administrative] burden," which "would be substantial" due to the fact that "voter registration rolls were computerized in only three Oklahoma counties at the time"); *Iowa Socialist Party v. Nelson*, 909 F.2d 1175, 1179 n.7 (8th Cir. 1990) ("In balancing a state's interests against the [plaintiff's] interests, we must examine the individual facts of each case."); *id.* at 1180 (relying on evidence about the substantial cost of changing voter registration forms to comply with plaintiff's request).

18

criterion. The Court asked the Constitution Party at oral argument about this apparent, fatal flaw in its appeal:

- *The Court*: "[I]f we [accept the *Baer/McBroom* criteria as controlling], how do you establish the criterion that your party has run a candidate? It hasn't."

- *Counsel for the Constitution Party*: "Well, I would argue that you couldn't—you shouldn't hold [against us] the fact that [Susan Ducey, who supports the Constitution Party but ran on a different ticket] took the easiest path to the ballot in that case . . . ."

- *The Court*: "But she didn't run on your label."

- *Counsel for the Constitution Party*: "Yeah, no, she didn't. And, I would have loved—"

Oral arg. at 31:53-32:18 (the Court then moving on to another topic). To be sure, Susan Ducey, a Constitution Party "supporter," ran for Congress in Kansas's Fourth Congressional District, but she did so as a candidate for the Kansas Reform Party. App'x at 9 ¶ 26. That is insufficient under the plain language of *Baer*. *See* 728 F.2d at 475. And it should be insufficient: Ducey's appearance on the ballot as a representative of *another* party does not demonstrate that *the Constitution Party* has a sufficient level of political support and organization to warrant voter affiliation tracking with respect to it. *See id.* at 475-76. Thus, even if this appeal turned on the Constitution Party's satisfaction of the *McBroom* factors cited in *Baer*, we still would not reverse. [8]

---

[8] We note that at oral argument, the Secretary volunteered that the Constitution Party used to be a recognized political party under a different party name. However, we do not think that a political entity (such as the Constitution Party) that evolved out of a

Continued . . .

19

## CONCLUSION

We conclude, confined to the legal theory on which the Constitution Party has rested its appeal, that reversal of the district court's grant of summary judgment to the Secretary is unwarranted.  AFFIRMED.

---

Cont.

distinct, recognized political party, necessarily meets the *McBroom* criteria cited in *Baer*. Those criteria served to show that political organizations had demonstrated a sufficient modicum of political support and organization such that they were distinguishable from mere fractional political interests.  It cannot be inferred that political support and organization for a unique, previously existing, but now defunct recognized political party translates into support for a later would-be-party byproduct (which may, for instance, have quite a different political platform—one to which supporters of the discrete prior party might not adhere).  Furthermore, the Secretary's assertion is not a fact in the record; and contrary and subsequent to the Secretary's assertion at oral argument, counsel for the Constitution Party effectively stated, through the dialogue included above, that the Constitution Party had never placed a candidate on the ballot for the purpose of satisfying the *McBroom* criteria.